HOLLAND *v*. SPARKS, receiver, GA. SO. & FLA. R. R. Co.

1. Negligence relatively to the safety of any particular person is the breach of some diligence due to that person. Where no duty of diligence appears relatively to the person injured, there can be no presumption of its breach, notwithstanding the broad language of section 3033 of the code. That section imposes the burden of proving the observance of such diligence as was due, not the burden of proving that none was due. For a railroad to be exempt from liability for a personal injury done by the running of its locomotives or cars, it is only necessary for it and its agents to exercise all ordinary and reasonable care and diligence (if any) due from it and its agents relatively to the person injured. A failure of diligence by these agents towards the company, unless that failure also involves negligence as between the company and such person, will afford the latter no cause of action, and in case of his death from the injury, would be no cause of action in favor of any person legally interested in his life.

2. Relatively to persons casually near the margin, but outside, of a railroad company's track in the country, where there is no road or pathway in customary use by pedestrians, the company owes

v 92-48

no duty or diligence in respect to the speed of its trains; and if, in consequence of very high speed, a train, or some of the cars, leave the track, and thereby a person thus casually exposed be wounded or killed, there is no cause of action, in the absence of evidence disclosing that there was reason for anticipating the presence of some one near the line of the road at the scene of the accident, or that the servants of the company in charge of the train actually saw some person there before the derailment occurred.

January 8, 1894.

Action for damages.  Before Judge BARTLETT.  Bibb superior court.  April term, 1893.

C. C. DUNCAN, OWENS JOHNSON and WILLINGHAM & LANE, by brief, for plaintiff.

GUSTIN, GUERRY & HALL, for defendant.

LUMPKIN, Justice.

1. Relatively to one to whom no diligence whatever is due, there can, in legal contemplation, be no negligence at all in causing him a personal injury.  Where some degree of diligence is due to another, with reference to his personal safety, failure to observe that degree of diligence will be negligence as to that person. In other words, negligence, relatively to the safety of any particular person, is the breach of some diligence due to him.  When an action is brought for a personal injury, caused by the running of a locomotive or car of a railroad company, the presumption of negligence does not arise against the company unless it appears that, at the time of the injury, there was due from the company to the person injured some degree of diligence to prevent that injury.  The burden of proving it owed no diligence is not upon the company, but the plaintiff must show that, relatively to the safety of the person injured, some diligence was due by the company.  As soon as he does this, the presumption immediately arises that the company's negligence caused the injury; and in order to escape liability, it must rebut this presump-

tion by showing the observance on its part of such diligence as was due. After much deliberation, we are satisfied that nothing, even in the broad language of section 3033 of the code, relieves the plaintiff, in cases of this character, from the necessity of showing that a duty of diligence, such as we have mentioned, existed; or imposes upon a railroad company the burden of proving, negatively, the contrary. A presumption of negligence is neither more nor less than a presumption that there was a breach of diligence. Such a breach could not, of course, be presumed in a case where it was affirmatively proved, as a matter of fact, that no diligence at all was due. If, therefore, it is incumbent on the plaintiff to make the duty of diligence, relatively to the person injured, appear, and he fails to do so, the case must stand upon the same footing, for as to what a plaintiff is required to show, "that which does not appear does not exist."

When the presumption of negligence has once been raised against a railroad company under the section above cited, and the company satisfactorily shows that its agents exercised all ordinary and reasonable care and diligence to prevent the particular injury for which the action was brought, it establishes its observance of the diligence due by it. What will constitute the amount or kind of diligence which will be required as "ordinary and reasonable" must necessarily vary under different circumstances. It cannot be measured or ascertained by any fixed and inflexible standard, because the words just quoted are themselves relative terms, and what, under some conditions, would be ordinary and reasonable diligence might, under other conditions, amount to even gross negligence. For instance, for most purposes, running a passenger-train through the country at a rate of twenty-five miles an hour would be safe, prudent and proper, while to run the same train at this rate over

a crossing in a crowded city would amount to wanton-
ness. The measure of diligence due, therefore, by a rail-
road company to any person is a relative one, and what
is or is not due diligence must be arrived at in every
case with reference to the surrounding circumstances
and the relations which, for the time being, the com-
pany and the person in question occupied towards each
other. A person injured by the running of a railway
train must, as we have already indicated, depend for re-
covery upon the negligent failure of the company, either
by itself or through its servants, to observe proper care
and caution to prevent inflicting upon him the very in-
jury of which he complains; and it is clear, from what
has been said above, that there should be no recovery
because of negligent conduct on the part of the com-
pany's servants which in no proper sense involved the
breach of a duty due to the person injured. The failure
of diligence by these servants in respect to any duty
they owed to the company itself, unless that failure also
involved negligence as between the company and the
person injured, would afford the latter no cause of ac-
tion. See Bishop Non-Cont. Law, §446; 1 Shearman
& R. Negligence, §8; O'Donnell *v.* P. & W. R. R. Co.,
6 R. I. 24. Of course, in case of the death of such per-
son in consequence of the injury, such failure would not
be a ground of action in favor of any party legally in-
terested in his life.

In the present case, it was insisted that the servants
in charge of the defendant's freight-train were running
it at a high and dangerous rate of speed, and that this
conduct on their part amounted to negligence. Most
probably it was a violation of the duty which these ser-
vants owed to the company and to those whose property
was being transported by the train, and in this sense
their conduct may have been negligent. But we do
not think their failure to observe due care and diligence

in running the train was negligence as against one in no way connected therewith, and whose injury by its rapid running and derailment was a consequence so remote as to require almost the gift of prophecy to anticipate it. We are not aware of any statute or rule of law requiring the courts to hold railroad companies liable in a case of this kind.

2. Applying the doctrine above announced to the facts of the present case, we are convinced that the court below was right in granting a nonsuit. The plaintiff's son was walking along or near the track of the railroad company. Being warned by a companion of the rapid approach of a freight-train, he stepped aside, and undoubtedly went a sufficient distance from the track to escape injury if all the cars had remained on the rails. But for some reason unexplained, several of the cars left the track, and he was stricken by one of them and killed, at a distance of about twenty feet from the rail. The place where the tragedy occurred was in the country, where there was no road or pathway in customary use by pedestrians. The deceased was simply walking along or near the track, and there can be no room to doubt that the unfortunate catastrophe which resulted in his death was as totally unexpected to the company's employees in charge of the train as it was to him. It may be that the train was running at a very high and dangerous rate of speed, but certainly the derailment of the cars could not have been foreseen by any one. It was doubtless a complete surprise, not only to the deceased, but to all the persons on the train. The latter had no more reason than did the deceased to suspect what was about to happen. The truth is, it was a mere accident and nothing more, and we cannot hold that the defendant company is responsible for the consequences.

It is certainly the duty of a railroad company to con-

duct its business with due regard to the safety of all persons to whom it owes any duty of diligence. In running its trains, the company must necessarily expect to find people at road crossings, or at other points where they have a right to be or to travel, and hence it becomes its duty to so regulate the speed of trains at such places as to avoid inflicting injuries. On the other hand, as to an unfrequented point in the country, where there is no road or pathway, naturally the company would have no special reason to anticipate coming in contact with any one, and therefore need not keep a train under such perfect control that it could be stopped immediately in case of a sudden and totally unexpected emergency. Of course, if the presence of any person exposed to peril by the running of the train be actually known to those in charge of the train, no matter at what point upon the company's line of railway, it would be the imperative duty of the train employees to use every reasonable effort to avoid inflicting injury upon such person. In the case before us, the deceased was at a place where those in charge of the train had no reason to expect any one, and therefore the company owed him no duty with respect to the speed at which its train approached that point. It does not appear by the evidence that the company's servants saw him, or had any actual knowledge of his presence. Even if this were otherwise, however, there would seem to be no good reason for the employees on the train to anticipate that if its speed was not checked, injury to him would, or might probably, ensue. He was, when killed, at an apparently safe distance from the rails. Even if he had been seen by the employees of the company who were on the train, there would have appeared no danger of his being run over or in any manner injured. Indeed, it is certain that but for the unexpected derailment, he would have been absolutely safe. He evidently, and with good rea-

son, considered his position a safe one.  Why should not the same circumstances upon which he relied likewise influence the trainmen in reaching the same conclusion ?  If the latter were unwarranted in regarding him beyond the reach of all probable danger, and were therefore negligent in failing to take precautions against injuring him, he must have been negligent as well, for doubtless he predicated his erroneous judgment upon precisely the same state of facts.  We feel certain that neither he nor the trainmen could even have imagined that the unusual and peculiar disaster which resulted in his death would take place.  It would be requiring of him more than ordinary foresight to have foreseen his danger; and as railroad companies must necessarily depend upon human agencies in discharging the duties devolving upon them, the diligence to be exacted at their hands should likewise be measured by that standard of prevision and sagacity only which is common to mortals. A case based upon somewhat similar facts, and which sustains the ruling now made, is that of Woolwine's admr. *v.* C. & O. Ry. Co., 32 Am. St. 859, s. c. 36 W. Va. 329.

It was insisted for the plaintiff in error that the proof did not affirmatively show that the deceased was upon the company's right of way, and he was therefore not to be regarded as a trespasser.  He was upon an embankment, artificially constructed by the defendant, and was within twenty feet of the track.  In the light of common knowledge and of these facts, we might safely assume he was in fact upon the right of way.  But it is really immaterial whether he was or not.  In either view, we are of the opinion that, relatively to him, there was no duty on the part of the company, and consequently no negligence which would make it liable for causing his death.          *Judgment affirmed.*