CENTRAL OF GEORGIA RAILWAY CO. *v.* CANNON.

1. The burden of showing that the expulsion of a person from a passenger-car was lawful does not devolve upon a railway company until it be shown that this person was rightfully in the car.

2. When the purchaser of a reduced-rate excursion railway-ticket, by signing a special contract thereon, agrees with the company issuing the ticket that "it shall not be good for returning passage unless the holder identifies himself . . as the original purchaser to the satisfaction of" a designated agent of the company in the town or city to which the purchaser is to be transported on his "going passage," that "when officially signed and stamped by said agent, this ticket shall then be good for return passage," and that "the holder will identify himself . . as the original purchaser of this ticket by writing his . . name or by other means, if necessary, when required by conductor or agents," it is incumbent upon such purchaser, as a condition precedent to having the ticket so signed and stamped, to furnish such proof of his identity and of the fact that he was the original purchaser as would be sufficient to satisfy a reasonable man. Under such a contract, the validating agent is entitled to call for other proof of identity than that afforded by the holder's writing his name.

3. It was, on the trial of a case involving the determination of the question whether or not there had been due compliance with the terms of such a contract, erroneous to instruct the jury that if the proof furnished to the validating agent by the ticket-holder as to his identity, etc., was satisfactory to them, he was entitled to have the ticket validated.

4. It was, in such a trial, also erroneous to give in charge to the jury language authorizing them to infer that if the ticket-holder produced to the validating agent evidence sufficient to show that the former "was the man he represented himself to be," this would identify him as the original purchaser of the ticket.

5. When, in such a trial, it was apparent that the manner in which the purchaser's name was written at the time of obtaining the ticket was peculiar and unusual, and therefore a matter of much consequence upon the question of identification at the time the ticket was presented for validation, it was erroneous to charge that "if the plaintiff signed said ticket in the presence of the validating officer, it is immaterial as to the nature and character of this signature."

6. The court ought not, in such a trial, to have given a charge to the effect that if the validating agent refused to sign and stamp the ticket and the holder boarded a train, tendered the ticket to the conductor, identified himself as the man he represented himself to be and as the original purchaser of the ticket, at the same time informing the conductor that the ticket had been offered for validation, and the conductor thereupon refused to accept the ticket and ejected the holder, he was entitled to recover.

7. If the purchaser of such a ticket at the time of buying the same intentionally adopted as the method of signing his name the making of the letters thereof in the form of printed characters, and thus rendered it impossible to identify himself as the original purchaser by reproducing his signature, the burden was on him to find other means of satisfactory identification. Merely proving by witnesses that his name was the same as that "printed" upon the ticket would not, in every case and under all circumstances, be sufficient or satisfactory proof that he was the original purchaser.

Argued February 10, — Decided March 17, 1899.

Action for damages.    Before Judge Beck.    City court of Griffin.    June 3, 1898.

*Hall & Boynton* and *Walter C. Beeks*, for plaintiff in error. *R. T. Daniel*, contra.

LUMPKIN, P. J.    It appears from the record, that H. A. Cannon purchased at Camilla, Ga., a reduced-rate ticket from that point to Atlanta and return.    When he applied to the agent at Camilla for such a ticket, he was handed one upon which was printed a contract the portion of which now material was of the nature indicated in the first headnote.    The agent asked Cannon to sign his name to that contract.    Thereupon the latter took a pen and, instead of affixing his signature in the usual way, made the letters composing his name in the form of printed characters, or, as stated by a witness, he "printed" his name upon the ticket instead of writing it.    The agent informed Cannon that this method of making his signature was not satisfactory; refused to stamp the ticket, and wrote upon it the word "void."    Cannon insisted it was his right to sign his name in any manner he pleased, and the agent, upon reflection, reaching the conclusion that he had no right to refuse to sell a ticket to an applicant for the same, furnished Cannon with another ticket in the same form, at the same time cautioning him that if he "printed" his name to the contract thereon, he would have difficulty in identifying himself in Atlanta as the original purchaser.    Nevertheless Cannon "printed" his name upon this second ticket, it was duly stamped by the agent, and subsequently was accepted for passage from Camilla to Atlanta. Desiring to return to Camilla, Cannon went to the validating agent in Atlanta, who requested him to write his name on a blank line upon the ticket reserved for this purpose, and thereupon Cannon "printed" his signature upon this line.    The validating agent refused to accept this as sufficient proof of Cannon's identity as the original purchaser of the ticket.    The latter then produced two witnesses who stated to the validating agent that they knew Cannon, and that he was the man he represented himself to be.    They were, however, unable to say that he was the man who purchased the ticket in Camilla.    No other

proof being offered, the validating agent declined to stamp and sign the ticket and informed Cannon that it would not be accepted for passage. Nevertheless he boarded a train of the defendant company and was ejected therefrom by the conductor, who refused to recognize the ticket as valid. Cannon brought his action against the company, recovered a verdict of $950.00, and the defendant filed a motion for a new trial, which was overruled, and it excepted. This motion contained many grounds. It is unnecessary to set them forth in full, for the material questions of law thereby presented are stated in the headnotes. In the main, these questions were raised by exceptions to instructions given by the judge at the trial, and to refusals to give in charge to the jury requests submitted by counsel for the defendant.

1. The most important issue at the trial was whether or not the plaintiff was rightfully upon the car of the defendant company as a passenger. The court charged, without qualification or explanation, that the burden of proof was upon the defendant to show that if the plaintiff was ejected from the car, he was lawfully expelled. Upon the assumption that the plaintiff was entitled to ride upon the defendant's train, this instruction would have been correct; but it being a seriously contested issue whether or not he was so entitled, the instruction should have been qualified by a statement to the effect that the burden referred to would rest upon the company only in the event the evidence satisfied the jury that the plaintiff had a legal right to enter and take passage upon this train. Certainly, until this appeared, the company was not bound to show that he was properly ejected.

2. The language of the contract signed by Cannon plainly expresses his undertaking with the railway company. In construing a similar contract, this court, in Morse v. Southern Railway Co., 102 Ga. 302, held it was incumbent upon the ticketholder to furnish such proof of his identity as would satisfy a reasonable man. It requires no argument to show that, under such a contract, the validating agent, if not satisfied by having the ticket-holder write his name, had the right to call for other proof of his identity as the original purchaser of the ticket, and

that so doing can not properly be regarded as either arbitrary or captious. *Southern Railway Co.* v. *Barlow*, 104 *Ga.* 213.

3. The person who, under the terms of such a contract, is to be satisfied of the identity of the holder as the original purchaser of the ticket is the validating agent; and while, under the ruling in the case first above cited, a wrong would be done to the ticket-holder if such agent arbitrarily refused to accept and act upon evidence that ought to satisfy a reasonable man, we know of no rule of law or justice which would authorize a jury to find that the agent acted captiously and without justification merely because the evidence presented to him would have been satisfactory to them. The question upon which the jury should have been instructed to pass was, not what they would have done, but how a reasonable man ought under the circumstances to have acted in discharging the duties imposed upon him.

4. One of the expressions used by the judge in his charge to the jury was capable of the construction that if the plaintiff produced to the validating agent evidence sufficient to show that the former "was the man he represented himself to be," it should be regarded as satisfactory proof that he was in fact the original purchaser of the ticket. Obviously, such an inference would be unauthorized. The plaintiff might have produced any number of reputable witnesses to show that his name was H. A. Cannon, but this would not have proved he was the H. A. Cannon who purchased the ticket in Camilla, or negative the inference that a person of an entirely different name had really purchased the ticket at that station, had there "printed" the name of H. A. Cannon upon it, and subsequently delivered the ticket to the plaintiff, in accordance with a preconcerted arrangement between them. It is a lamentable fact too well known to be overlooked that, as regards the unauthorized and fraudulent transfer of non-negotiable railway-tickets, the standard of morality to which those who deal in and use such tickets have attained is not, as yet, sufficiently elevated to justify any inference, much less a presumption of law, that the holder of such a ticket is the person who purchased it from the carrier.

5. The preliminary statement preceding this discussion dis-

closes the manner in which the plaintiff placed his name beneath the contract on the ticket at the time he purchased it in Camilla, and the manner in which he wrote his name at the time of offering the ticket for validation in Atlanta. In view of these facts, it was clearly erroneous to instruct the jury as indicated in the fifth headnote. It is apparent without argument that the nature and character of this "signature" were of the utmost materiality and importance.

6. The charge referred to in the sixth headnote was also erroneous. The jury were, in effect, instructed by the court that no matter what passed between Cannon and the validating agent, or how reasonably the latter may have acted in declining to stamp and sign the ticket, the holder of it was nevertheless entitled to a return passage thereon, if he satisfactorily identified himself to the conductor as the original purchaser and merely informed the latter that the ticket had been offered for validation.

7. As will have been seen, Cannon intentionally and deliberately adopted a peculiar and unusual method of affixing his name to the contract upon the ticket. Any man of ordinary common sense ought to have known that when he merely "printed" his name in the manner stated, he could not identify himself as the man to whom the ticket was issued by again "printing" his name in a similar way. Moreover, Cannon was distinctly cautioned that signing his name to the contract in such a manner would inevitably give him trouble when he sought to have the ticket validated for his return passage. There is in the record some evidence strongly indicating that he had a definite object in acting as he did. One of the witnesses introduced at the trial testified that Cannon, immediately after signing the second ticket handed to him by the agent at Camilla, said, in speaking of the exposition in Atlanta, which he was expecting to attend, that going there would be "flying high and having a big time and cost a heap; and some of these infernal railroads will have to pay for it, and pay my expenses." In view of all the facts and circumstances of this case, there is certainly no hardship done to the plaintiff in holding that, as he had voluntarily placed it out of his power to identify him-

self "by writing his name" in the presence of the validating agent, it was incumbent upon the former to find other satisfactory means of identifying himself as the original purchaser of the ticket. We do not think that the refusal to accept as sufficient for this purpose the statements of the witnesses produced by the plaintiff, showing merely that he was H. A. Cannon, was at all unreasonable.

On the whole, we are of the opinion that a new trial should be ordered. *Judgment reversed. All the Justices concurring.*